(Slip Opinion)     OCTOBER TERM, 2013     1

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## PETRELLA *v.* METRO-GOLDWYN-MAYER, INC., ET AL.

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

No. 12–1315.   Argued January 21, 2014—Decided May 19, 2014

The Copyright Act (Act) protects copyrighted works published before 1978 for an initial period of 28 years, renewable for a period of up to 67 years. 17 U. S. C. §304(a). The author's heirs inherit the renewal rights. See §304(a)(1)(C)(ii)–(iv). When an author who has assigned her rights away "dies before the renewal period, . . . the assignee may continue to use the original work only if the author's successor transfers the renewal rights to the assignee," *Stewart* v. *Abend*, 495 U. S. 207, 221. The Act provides both equitable and legal remedies for infringement: an injunction "on such terms as [a court] may deem reasonable to prevent or restrain infringement of a copyright," §502(a); and, at the copyright owner's election, either (1) the "owner's actual damages and any additional profits of the infringer," §504(a)(1), which petitioner seeks in this case, or (2) specified statutory damages, §504(c). The Act's statute of limitations provides: "No civil action shall be maintained under the [Act] unless it is commenced within three years after the claim accrued." §507(b). A claim ordinarily accrues when an infringing act occurs. Under the separate-accrual rule that attends the copyright statute of limitations, when a defendant has committed successive violations, each infringing act starts a new limitations period. However, under §507(b), each infringement is actionable only within three years of its occurrence.

Here, the allegedly infringing work is the motion picture Raging Bull, based on the life of boxing champion Jake LaMotta, who, with Frank Petrella, told his story in, *inter alia,* a screenplay copyrighted in 1963. In 1976, the pair assigned their rights and renewal rights, which were later acquired by respondent United Artists Corporation, a subsidiary of respondent Metro-Goldwyn-Mayer, Inc. (collectively, MGM). In 1980, MGM released, and registered a copyright in, the

film Raging Bull, and it continues to market the film today. Frank Petrella died during the initial copyright term, so renewal rights reverted to his heirs. Plaintiff below, petitioner here, Paula Petrella (Petrella), his daughter, renewed the 1963 copyright in 1991, becoming its sole owner. Seven years later, she advised MGM that its exploitation of Raging Bull violated her copyright and threatened suit. Some nine years later, on January 6, 2009, she filed an infringement suit, seeking monetary and injunctive relief limited to acts of infringement occurring on or after January 6, 2006. Invoking the equitable doctrine of laches, MGM moved for summary judgment. Petrella's 18-year delay in filing suit, MGM argued, was unreasonable and prejudicial to MGM. The District Court granted MGM's motion, holding that laches barred Petrella's complaint. The Ninth Circuit affirmed.

*Held*:

    1. Laches cannot be invoked as a bar to Petrella's pursuit of a claim for damages brought within §507(b)'s three-year window. Pp. 11–19.

    (a) By permitting a successful plaintiff to gain retrospective relief only three years back from the time of suit, the copyright statute of limitations itself takes account of delay. Brought to bear here, §507(b) directs that Petrella cannot reach MGM's returns on its investment in Raging Bull in years before 2006. Moreover, if infringement within the three-year window is shown, a defendant may offset against profits made in that period expenses incurred in generating those profits. See §504(b). In addition, a defendant may retain the return on investment shown to be attributable to its own enterprise, as distinct from the value created by the infringed work. See *ibid.* Both before and after the merger of law and equity in 1938, this Court has cautioned against invoking laches to bar legal relief. See, *e.g., Holmberg* v. *Armbrecht*, 327 U. S. 392, 395, 396. Pp. 11–14.

    (b) MGM's principal arguments regarding the contemporary scope of the laches defense are unavailing. Pp. 14–19.

    (1) MGM urges that, because laches is listed in Federal Rule of Civil Procedure 8(c) as an affirmative defense discrete from a statute of limitations defense, the plea should be "available . . . in every civil action" to bar all forms of relief. Such an expansive role careens away from understandings, past and present, of the essentially gap-filling, not legislation-overriding, office of laches. This Court has never applied laches to bar in their entirety claims for discrete wrongs occurring within a federally prescribed limitations period. Inviting individual judges to set a time limit other than the one Congress prescribed would tug against the uniformity Congress sought to achieve in enacting §507(b). Pp. 14–15.

    (2) MGM contends that laches, like equitable tolling, should be

"read into every federal statute of limitation," *Holmberg*, 327 U. S., at 397. However, tolling lengthens the time for commencing a civil action where there is a statute of limitations and is, in effect, a rule of interpretation tied to that statutory limit. See, *e.g., Young* v. *United States*, 535 U. S. 43, 49–50. In contrast, laches, which originally served as a guide when no statute of limitations controlled, can scarcely be described as a rule for interpreting a statutory prescription. Pp. 15–16.

(3) MGM insists that the laches defense must be available to prevent a copyright owner from sitting still, doing nothing, waiting to see what the outcome of an alleged infringer's investment will be. It is hardly incumbent on copyright owners, however, to challenge each and every actionable infringement. And there is nothing untoward about waiting to see whether an infringer's exploitation undercuts the value of the copyrighted work, has no effect on that work, or even complements it. Section 507(b)'s limitations period, coupled to the separate-accrual rule, allows a copyright owner to defer suit until she can estimate whether litigation is worth the candle. Pp. 16–17.

(4) MGM is concerned that evidence needed or useful to defend against liability will be lost during a copyright owner's inaction. But Congress must have been aware that the passage of time and the author's death could cause evidentiary issues when it provided for reversionary renewal rights that an author's heirs can exercise long after a work was written and copyrighted. Moreover, because a copyright plaintiff bears the burden of proving infringement, any hindrance caused by evidence unavailability is as likely to affect plaintiffs as defendants. The need for extrinsic evidence is also reduced by the registration mechanism, under which both the certificate and the original work must be on file with the Copyright Office before a copyright owner can sue for infringement. Pp. 17–18.

(5) Finally, when a copyright owner engages in intentionally misleading representations concerning his abstention from suit, and the alleged infringer detrimentally relies on such deception, the doctrine of estoppel may bar the copyright owner's claims completely, eliminating all potential remedies. The gravamen of estoppel, a defense long recognized as available in actions at law, is wrongdoing, overt misleading, and consequent loss. Estoppel does not undermine the statute of limitations, for it rests on misleading, whether engaged in early on, or later in time. P. 19.

2. While laches cannot be invoked to preclude adjudication of a claim for damages brought within the Act's three-year window, in extraordinary circumstances, laches may, at the very outset of the litigation, curtail the relief equitably awarded. For example, where owners of a copyrighted architectural design, although aware of an

allegedly infringing housing project, delayed suit until the project was substantially constructed and partially occupied, an order mandating destruction of the project would not be tolerable. See *Chirco* v. *Crosswinds Communities, Inc.*, 474 F. 3d 227, 236. Nor, in the face of an unexplained delay in commencing suit, would it be equitable to order "total destruction" of a book already printed, packed, and shipped. See *New Era Publications Int'l* v. *Henry Holt & Co.*, 873 F. 2d 576, 584–585. No such extraordinary circumstance is present here. Petrella notified MGM of her copyright claims *before* MGM invested millions of dollars in creating a new edition of Raging Bull, and the equitable relief she seeks—*e.g.,* disgorgement of unjust gains and an injunction against future infringement—would not result in anything like "total destruction" of the film. Allowing Petrella's suit to go forward will put at risk only a fraction of the income MGM has earned during the more than three decades Raging Bull has been marketed and will work no unjust hardship on innocent third parties. Should Petrella ultimately prevail on the merits, the District Court, in determining appropriate injunctive relief and assessing profits, may take account of Petrella's delay in commencing suit. In doing so, however, the court must closely examine MGM's alleged reliance on Petrella's delay, taking account of MGM's early knowledge of her claims, the protection MGM might have achieved through a declaratory judgment action, the extent to which MGM's investment was protected by the separate-accrual rule, the court's authority to order injunctive relief "on such terms as it may deem reasonable," §502(a), and any other relevant considerations. Pp. 19–22.

695 F. 3d 946, reversed and remanded.

GINSBURG, J., delivered the opinion of the Court, in which SCALIA, THOMAS, ALITO, SOTOMAYOR, and KAGAN, JJ., joined. BREYER, J., filed a dissenting opinion, in which ROBERTS, C. J., and KENNEDY, J., joined.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

No. 12–1315

## PAULA PETRELLA, PETITIONER *v.* METRO-GOLDWYN-MAYER, INC., ET AL.

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

[May 19, 2014]

JUSTICE GINSBURG delivered the opinion of the Court.

The Copyright Act provides that "[n]o civil action shall be maintained under the [Act] unless it is commenced within three years after the claim accrued." 17 U. S. C. §507(b). This case presents the question whether the equitable defense of laches (unreasonable, prejudicial delay in commencing suit) may bar relief on a copyright infringement claim brought within §507(b)'s three-year limitations period. Section 507(b), it is undisputed, bars relief of any kind for conduct occurring prior to the three-year limitations period. To the extent that an infringement suit seeks relief solely for conduct occurring within the limitations period, however, courts are not at liberty to jettison Congress' judgment on the timeliness of suit. Laches, we hold, cannot be invoked to preclude adjudication of a claim for damages brought within the three-year window. As to equitable relief, in extraordinary circumstances, laches may bar at the very threshold the particular relief requested by the plaintiff. And a plaintiff's delay can always be brought to bear at the remedial stage, in determining appropriate injunctive relief, and in assessing

the "profits of the infringer . . . attributable to the infringement." §504(b).[1]

Petitioner Paula Petrella, in her suit for copyright infringement, sought no relief for conduct occurring outside §507(b)'s three-year limitations period. Nevertheless, the courts below held that laches barred her suit in its entirety, without regard to the currency of the conduct of which Petrella complains. That position, we hold, is contrary to §507(b) and this Court's precedent on the province of laches.

I

The Copyright Act (Act), 17 U. S. C. §101 *et seq.*, grants copyright protection to original works of authorship. §102(a). Four aspects of copyright law bear explanation at the outset.

*First*, the length of a copyright term. Under the Act, a copyright "vests initially in the author or authors of the work," who may transfer ownership to a third party. §201. The Act confers on a copyright owner certain exclusive rights, including the rights to reproduce and distribute the work and to develop and market derivative works. §106. Copyrighted works published before 1978—as was the work at issue—are protected for an initial period of 28 years, which may be—and in this case was—extended for a renewal period of up to 67 years. §304(a). From and after January 1, 1978, works are generally protected from the date of creation until 70 years after the author's death.

—————————

[1] As infringement remedies, the Copyright Act provides for injunctions, §502, impoundment and disposition of infringing articles, §503, damages and profits, §504, costs and attorney's fees, §505. Like other restitutional remedies, recovery of profits "is not easily characterized as legal or equitable," for it is an "amalgamation of rights and remedies drawn from both systems." Restatement (Third) of Restitution and Unjust Enrichment §4, Comment *b*, p. 28 (2010). Given the "protean character" of the profits-recovery remedy, see *id.,* Comment *c*, at 30, we regard as appropriate its treatment as "equitable" in this case.

§302(a).

*Second*, copyright inheritance. For works copyrighted under the pre-1978 regime in which an initial period of protection may be followed by a renewal period, Congress provided that the author's heirs inherit the renewal rights. See §304(a)(1)(C)(ii)–(iv). We held in *Stewart* v. *Abend*, 495 U. S. 207 (1990), that if an author who has assigned her rights away "dies before the renewal period, then the assignee may continue to use the original work [to produce a derivative work] only if the author's successor transfers the renewal rights to the assignee." *Id.,* at 221.[2]

*Third*, remedies. The Act provides a variety of civil remedies for infringement, both equitable and legal. See §§502–505, described *supra,* at 2, n. 1. A court may issue an injunction "on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." §502(a). At the election of the copyright owner, a court may also award either (1) "the copyright owner's actual damages and any additional profits of the infringer," §504(a)(1), which petitioner seeks in the instant case, or (2) statutory damages within a defined range, §504(c).

*Fourth*, and most significant here, the statute of limitations. Until 1957, federal copyright law did not include a statute of limitations for civil suits. Federal courts therefore used analogous state statutes of limitations to determine the timeliness of infringement claims. See S. Rep. No. 1014, 85th Cong., 1st Sess., 2 (1957) (hereinafter Senate Report). And they sometimes invoked laches to abridge the state-law prescription. As explained in *Teamsters & Employers Welfare Trust of Ill.* v. *Gorman Bros. Ready Mix*, 283 F. 3d 877, 881 (CA7 2002): "When Congress fails to enact a statute of limitations, a [federal]

─────────

[2] For post-1978 works, heirs still have an opportunity to recapture rights of the author. See 3 M. Nimmer & D. Nimmer, Copyright §11.01[A], p. 11–4 (2013) (hereinafter Nimmer).

court that borrows a state statute of limitations but permits it to be abridged by the doctrine of laches is not invading congressional prerogatives. It is merely filling a legislative hole." (internal citation omitted). In 1957, Congress addressed the matter and filled the hole; it prescribed a three-year look-back limitations period for all civil claims arising under the Copyright Act. See Act of Sept. 7, 1957, Pub. L. 85–313, 71 Stat. 633, 17 U. S. C. §115(b) (1958 ed.). The provision, as already noted, reads: "No civil action shall be maintained under the provisions of this title unless it is commenced within three years after the claim accrued." §507(b).[3]

The federal limitations prescription governing copyright suits serves two purposes: (1) to render uniform and certain the time within which copyright claims could be pursued; and (2) to prevent the forum shopping invited by disparate state limitations periods, which ranged from one to eight years. Senate Report 2; see H. R. Rep. No. 2419, 84th Cong., 2d Sess., 2 (1956). To comprehend how the Copyright Act's limitations period works, one must understand when a copyright infringement claim accrues.

A claim ordinarily accrues "when [a] plaintiff has a complete and present cause of action." *Bay Area Laundry and Dry Cleaning Pension Trust Fund* v. *Ferbar Corp. of Cal.*, 522 U. S. 192, 201 (1997) (internal quotation marks omitted). In other words, the limitations period generally begins to run at the point when "the plaintiff can file suit and obtain relief." *Ibid.* A copyright claim thus arises or "accrue[s]" when an infringing act occurs.[4]

--------

[3] The Copyright Act was pervasively revised in 1976, but the three-year look-back statute of limitations has remained materially unchanged. See Act of Oct. 19, 1976, §101, 90 Stat. 2586.

[4] Although we have not passed on the question, nine Courts of Appeals have adopted, as an alternative to the incident of injury rule, a "discovery rule," which starts the limitations period when "the plaintiff discovers, or with due diligence should have discovered, the injury that

Opinion of the Court

It is widely recognized that the separate-accrual rule attends the copyright statute of limitations.[5] Under that rule, when a defendant commits successive violations, the statute of limitations runs separately from each violation. Each time an infringing work is reproduced or distributed, the infringer commits a new wrong. Each wrong gives rise to a discrete "claim" that "accrue[s]" at the time the wrong occurs.[6] In short, each infringing act starts a new limitations period. See *Stone* v. *Williams*, 970 F. 2d 1043, 1049 (CA2 1992) ("Each act of infringement is a distinct harm giving rise to an independent claim for relief.").

Under the Act's three-year provision, an infringement is actionable within three years, and only three years, of its occurrence. And the infringer is insulated from liability for earlier infringements of the same work. See 3 M. Nimmer & D. Nimmer, Copyright §12.05[B][1][b], p. 12–150.4 (2013) ("If infringement occurred within three years prior to filing, the action will not be barred even if prior

——————

forms the basis for the claim." *William A. Graham Co.* v. *Haughey*, 568 F. 3d 425, 433 (CA3 2009) (internal quotation marks omitted). See also 6 W. Patry, Copyright §20:19, p. 20–28 (2013) (hereinafter Patry) ("The overwhelming majority of courts use discovery accrual in copyright cases.").

[5] See generally *id.*, §20:23, at 20–44; 3 Nimmer §12.05[B][1][b], at 12–150.2 to 12–150.4. See also, *e.g., William A. Graham Co.*, 568 F. 3d, at 433; *Peter Letterese & Assoc., Inc.* v. *World Inst. of Scientology Enterprises, Int'l*, 533 F. 3d 1287, 1320, n. 39 (CA11 2008); *Bridgeport Music, Inc.* v. *Rhyme Syndicate Music*, 376 F. 3d 615, 621 (CA6 2004); *Makedwde Publishing Co.* v. *Johnson*, 37 F. 3d 180, 182 (CA5 1994); *Roley* v. *New World Pictures, Ltd.*, 19 F. 3d 479, 481 (CA9 1994).

[6] Separately accruing harm should not be confused with harm from past violations that are continuing. Compare *Klehr* v. *A. O. Smith Corp.*, 521 U. S. 179, 190 (1997) (for separately accruing harm, each new act must cause "harm [to the plaintiff] over and above the harm that the earlier acts caused"), with *Havens Realty Corp.* v. *Coleman*, 455 U. S. 363, 380–381 (1982) ("[W]here a plaintiff . . . challenges . . . an unlawful practice that continues into the limitations period, the complaint is timely when it is filed within [the limitations period, measured from] the last asserted occurrence of that practice." (footnote omitted)).

infringements by the same party as to the same work are barred because they occurred more than three years previously."). Thus, when a defendant has engaged (or is alleged to have engaged) in a series of discrete infringing acts, the copyright holder's suit ordinarily will be timely under §507(b) with respect to more recent acts of infringement (*i.e.,* acts within the three-year window), but untimely with respect to prior acts of the same or similar kind.[7]

In sum, Congress provided two controlling time prescriptions: the copyright term, which endures for decades, and may pass from one generation to another; and §507(b)'s limitations period, which allows plaintiffs during that lengthy term to gain retrospective relief running only

———————

[7] A case arising outside of the copyright context is illustrative. In *Bay Area Laundry and Dry Cleaning Pension Trust Fund* v. *Ferbar Corp. of Cal.*, 522 U. S. 192 (1997), an employer was delinquent in making a series of scheduled payments to an underfunded pension plan. See *id.,* at 198–199. The trustees filed suit just over six years after the first missed payment, barely outside of the applicable six-year statute of limitations. See *id.,* at 198. Because the first missed payment in the series fell outside the statute of limitations, the employer argued that the subsequent missed payments were also time barred. See *id.,* at 206. We rejected that argument. The remaining claims were timely, we held, because "each missed payment create[d] a separate cause of action with its own six-year limitations period." *Ibid.* Cf. *Klehr*, 521 U. S., at 190 (for civil Racketeer Influenced and Corrupt Organizations Act claims, plaintiff may recover for acts occurring within the limitations period, but may not use an "independent, new predicate act as a bootstrap to recover for injuries caused by other earlier predicate acts that took place outside the limitations period"); *National Railroad Passenger Corporation* v. *Morgan*, 536 U. S. 101, 114–121 (2002) (distinguishing discrete acts, each independently actionable, from conduct "cumulative [in] effect," *e.g.,* hostile environment claims pursued under Title VII of the Civil Rights Act of 1964, 42 U. S. C. §2000e *et seq.*; "in direct contrast to discrete acts, a single [instance of hostility] may not be actionable on its own"). But cf. *post,* at 10–11 (ignoring the distinction *Morgan* took care to draw between discrete acts independently actionable and conduct cumulative in effect).

three years back from the date the complaint was filed.

## II
## A

The allegedly infringing work in this case is the critically acclaimed motion picture Raging Bull, based on the life of boxing champion Jake LaMotta. After retiring from the ring, LaMotta worked with his longtime friend, Frank Petrella, to tell the story of the boxer's career. Their venture resulted in three copyrighted works: two screenplays, one registered in 1963, the other in 1973, and a book, registered in 1970. This case centers on the screenplay registered in 1963. The registration identified Frank Petrella as sole author, but also stated that the screenplay was written "in collaboration with" LaMotta. App. 164.

In 1976, Frank Petrella and LaMotta assigned their rights in the three works, including renewal rights, to Chartoff-Winkler Productions, Inc. Two years later, respondent United Artists Corporation, a subsidiary of respondent Metro-Goldwyn-Mayer, Inc. (collectively, MGM), acquired the motion picture rights to the book and both screenplays, rights stated by the parties to be "exclusiv[e] and forever, including all periods of copyright and renewals and extensions thereof." *Id.,* at 49. In 1980, MGM released, and registered a copyright in, the film Raging Bull, directed by Martin Scorsese and starring Robert De Niro, who won a Best Actor Academy Award for his portrayal of LaMotta. MGM continues to market the film, and has converted it into formats unimagined in 1980, including DVD and Blu-ray.

Frank Petrella died in 1981, during the initial terms of the copyrights in the screenplays and book. As this Court's decision in *Stewart* confirmed, Frank Petrella's renewal rights reverted to his heirs, who could renew the copyrights unburdened by any assignment previously made by the author. See 495 U. S., at 220–221 (relying on

Court's earlier decision in *Miller Music Corp.* v. *Charles N. Daniels, Inc.*, 362 U. S. 373 (1960)).

Plaintiff below, petitioner here, Paula Petrella (Petrella) is Frank Petrella's daughter. Learning of this Court's decision in *Stewart*, Petrella engaged an attorney who, in 1991, renewed the copyright in the 1963 screenplay. Because the copyrights in the 1973 screenplay and the 1970 book were not timely renewed, the infringement claims in this case rest exclusively on the screenplay registered in 1963. Petrella is now sole owner of the copyright in that work.[8]

In 1998, seven years after filing for renewal of the copyright in the 1963 screenplay, Petrella's attorney informed MGM that Petrella had obtained the copyright to that screenplay. Exploitation of any derivative work, including Raging Bull, the attorney asserted, infringed on the copyright now vested in Petrella. During the next two years, counsel for Petrella and MGM exchanged letters in which MGM denied the validity of the infringement claims, and Petrella repeatedly threatened to take legal action.

B

Some nine years later, on January 6, 2009, Petrella filed a copyright infringement suit in the United States District Court for the Central District of California. She alleged that MGM violated and continued to violate her copyright in the 1963 screenplay by using, producing, and distributing Raging Bull, a work she described as derivative of the 1963 screenplay. Petrella's complaint sought monetary and injunctive relief. Because the statute of limitations for copyright claims requires commencement of suit "within three years after the claim accrued," §507(b),

––––––––

[8] Petrella's attorney filed the renewal application on behalf of Frank Petrella's heirs. When Petrella's mother died and her brother assigned his rights to her, Petrella became the sole owner of all rights in the 1963 screenplay.

Petrella sought relief only for acts of infringement occurring on or after January 6, 2006. No relief, she recognizes, can be awarded for infringing acts prior to that date.

MGM moved for summary judgment on several grounds, among them, the equitable doctrine of laches. Petrella's 18-year delay, from the 1991 renewal of the copyright on which she relied, until 2009, when she commenced suit, MGM maintained, was unreasonable and prejudicial to MGM. See Memorandum of Points and Authorities in Support of Defendants' Motion for Summary Judgment in No. CV 09–0072 (CD Cal.).

The District Court granted MGM's motion. See App. to Pet. for Cert. 28a–48a. As to the merits of the infringement claims, the court found, disputed issues of material fact precluded summary adjudication. See *id.,* at 34a–42a. Even so, the court held, laches barred Petrella's complaint. *Id.,* at 42a–48a. Petrella had unreasonably delayed suit by not filing until 2009, the court concluded, and further determined that MGM was prejudiced by the delay. *Id.,* at 42a–46a. In particular, the court stated, MGM had shown "expectations-based prejudice," because the company had "made significant investments in exploiting the film"; in addition, the court accepted that MGM would encounter "evidentiary prejudice," because Frank Petrella had died and LaMotta, then aged 88, appeared to have sustained a loss of memory. *Id.,* at 44a–46a.[9]

The U. S. Court of Appeals for the Ninth Circuit affirmed the laches-based dismissal. 695 F. 3d 946 (2012). Under Ninth Circuit precedent, the Court of Appeals first observed, "[i]f any part of the alleged wrongful conduct occurred outside of the limitations period, courts presume

---

[9] LaMotta, the court noted, "ha[d] suffered myriad blows to his head as a fighter years ago," and "no longer recognize[d Petrella], even though he ha[d] known her for forty years." App. to Pet. for Cert. 45a–46a.

that the plaintiff's claims are barred by laches." *Id.,* at 951 (internal quotation marks omitted). The presumption was applicable here, the court indicated, because "[t]he statute of limitations for copyright claims in civil cases is three years," *ibid.* (citing §507(b)), and Petrella was aware of her potential claims many years earlier (as was MGM), *id.,* at 952. "[T]he true cause of Petrella's delay," the court suggested, "was, as [Petrella] admits, that 'the film hadn't made money' [in years she deferred suit]." *Id.,* at 953.[10] Agreeing with the District Court, the Ninth Circuit determined that MGM had established expectations-based prejudice: the company had made a large investment in Raging Bull, believing it had complete ownership and control of the film. *Id.,* at 953–954.[11]

Judge Fletcher concurred only because Circuit precedent obliged him to do so. *Id.,* at 958. Laches in copyright cases, he observed, is "entirely a judicial creation," one notably "in tension with Congress' [provision of a three-year limitations period]." *Ibid.*

We granted certiorari to resolve a conflict among the Circuits on the application of the equitable defense of laches to copyright infringement claims brought within the three-year look-back period prescribed by Congress.[12]

---

[10] In her declaration, Petrella stated that MGM told her in 2001 that the film was in "a huge deficit financially," "would never show a profit," and, for that reason, "MGM would not continue to send [financial] statements [to her]." App. 234.

[11] The Court of Appeals did not consider whether MGM had also shown evidentiary prejudice. 695 F. 3d 946, 953 (CA9 2012).

[12] See *Lyons Partnership L. P.* v. *Morris Costumes, Inc.*, 243 F. 3d 789, 798 (CA4 2001) (laches defense unavailable in copyright infringement cases, regardless of remedy sought); *Peter Letterese*, 533 F. 3d, at 1320 ("[T]here is a strong presumption [in copyright cases] that a plaintiff's suit is timely if it is filed before the statute of limitations has run. Only in the most extraordinary circumstances will laches be recognized as a defense."); *Chirco* v. *Crosswinds Communities, Inc.*, 474 F. 3d 227, 233 (CA6 2007) (in copyright litigation, laches applies only to "the most

570 U. S. ___ (2013).

## III

We consider first whether, as the Ninth Circuit held, laches may be invoked as a bar to Petrella's pursuit of legal remedies under 17 U. S. C. §504(b). The Ninth Circuit erred, we hold, in failing to recognize that the copyright statute of limitations, §507(b), itself takes account of delay. As earlier observed, see *supra*, at 5–6, a successful plaintiff can gain retrospective relief only three years back from the time of suit. No recovery may be had for infringement in earlier years. Profits made in those years remain the defendant's to keep. Brought to bear here, §507(b) directs that MGM's returns on its investment in Raging Bull in years outside the three-year window (years before 2006) cannot be reached by Petrella. Only by disregarding that feature of the statute, and the separate-accrual rule attending §507(b), see *supra,* at 4–5, could the Court of Appeals presume that infringing acts occurring before January 6, 2006 bar all relief, monetary and injunctive, for infringement occurring on and after that date. See 695 F. 3d, at 951; *supra,* at 9–10.[13]

Moreover, if infringement within the three-year look-back period is shown, the Act allows the defendant to

_____

compelling of cases"); *Jacobsen* v. *Deseret Book Co.*, 287 F. 3d 936, 950 (CA10 2002) ("Rather than deciding copyright cases on the issue of laches, courts should generally defer to the three-year statute of limitations."); *New Era Publications Int'l* v. *Henry Holt & Co.*, 873 F. 2d 576, 584–585 (CA2 1989) ("severe prejudice, coupled with . . . unconscionable delay . . . mandates denial of . . . injunction for laches and relegation of [plaintiff] to its damages remedy"). Cf. *post,* at 1, 13 (acknowledging that application of laches should be "extraordinary," confined to "few and unusual cases").

[13] Assuming Petrella had a winning case on the merits, the Court of Appeals' ruling on laches would effectively give MGM a cost-free license to exploit Raging Bull throughout the long term of the copyright. The value to MGM of such a free, compulsory license could exceed by far MGM's expenditures on the film.

prove and offset against profits made in that period "deductible expenses" incurred in generating those profits. §504(b). In addition, the defendant may prove and offset "elements of profit attributable to factors other than the copyrighted work." §504(b). The defendant thus may retain the return on investment shown to be attributable to its own enterprise, as distinct from the value created by the infringed work. See *Sheldon* v. *Metro-Goldwyn Pictures Corp.*, 309 U. S. 390, 402, 407 (1940) (equitably apportioning profits to account for independent contributions of infringing defendant). See also *infra,* at 19–22 (delay in commencing suit as a factor in determining contours of relief appropriately awarded).

Last, but hardly least, laches is a defense developed by courts of equity; its principal application was, and remains, to claims of an equitable cast for which the Legislature has provided no fixed time limitation. See 1 D. Dobbs, Law of Remedies §2.4(4), p. 104 (2d ed. 1993) (hereinafter Dobbs) ("laches . . . may have originated in equity because no statute of limitations applied, . . . suggest[ing] that laches should be limited to cases in which no statute of limitations applies"). Both before and after the merger of law and equity in 1938,[14] this Court has cautioned against invoking laches to bar legal relief. See *Holmberg* v. *Armbrecht*, 327 U. S. 392, 395, 396 (1946) (in actions at law, "[i]f Congress explicitly puts a limit upon the time for enforcing a right which it created, there is an end of the matter," but "[t]raditionally . . . , statutes of limitation are not controlling measures of equitable relief"); *Merck & Co.* v. *Reynolds*, 559 U. S. 633, 652 (2010) (quoting, for its current relevance, statement in *United States* v. *Mack*, 295 U. S. 480, 489 (1935), that "[l]aches within the term of

---

[14] See Fed. Rule Civ. Proc. 2 ("There is one form of action—the civil action."); Rule 8(c) (listing among affirmative defenses both "laches" and "statute of limitations").

the statute of limitations is no defense [to an action] at law"); *County of Oneida* v. *Oneida Indian Nation of N. Y.*, 470 U. S. 226, 244, n. 16 (1985) ("[A]pplication of the equitable defense of laches in an action at law would be novel indeed.").[15]

Because we adhere to the position that, in face of a statute of limitations enacted by Congress, laches cannot be invoked to bar legal relief, the dissent thinks we "plac[e] insufficient weight upon the rules and practice of modern litigation." *Post,* at 12. True, there has been, since 1938, only "one form of action—the civil action." Fed. Rule Civ. Proc. 2. But "the substantive and remedial principles [applicable] prior to the advent of the federal rules [have] not changed." 4 C. Wright & A. Miller, Federal Practice and Procedure §1043, p. 177 (3d ed. 2002). *Holmberg*, *Merck*, and *Oneida* so illustrate. The dissent presents multiple citations, see *post,* at 1, 3–4, 7–8, 10–11, many of them far afield from the issue at hand, others obscuring what the cited decisions in fact ruled. Compare, *e.g., post,* at 1, 11, with *infra,* at 20–21 (describing *Chirco*

---

[15] In contrast to the Copyright Act, the Lanham Act, which governs trademarks, contains no statute of limitations, and expressly provides for defensive use of "equitable principles, including laches." 15 U. S. C. §1115(b)(9). But cf. *post,* at 8, 11 (citing *Hot Wax, Inc.* v. *Turtle Wax, Inc.,* 191 F. 3d 813 (CA7 1999), but failing to observe that Lanham Act contains no statute of limitations).

The Patent Act states: "[N]o recovery shall be had for any infringement committed more than six years prior to the filing of the complaint." 35 U. S. C. §286. The Act also provides that "[n]oninfringement, absence of liability for infringement or unenforceability" may be raised "in any action involving the validity or infringement of a patent." §282(b) (2012 ed.). Based in part on §282 and commentary thereon, legislative history, and historical practice, the Federal Circuit has held that laches can bar damages incurred prior to the commencement of suit, but not injunctive relief. *A. C. Aukerman Co.* v. *R. L. Chaides Constr. Co.,* 960 F. 2d 1020, 1029–1031, 1039–1041 (1992) (en banc). We have not had occasion to review the Federal Circuit's position.

v. *Crosswinds Communities, Inc.*, 474 F. 3d 227 (CA6 2007)); *post,* at 1, 10–11, with *infra*, at 15, n. 16 (describing *National Railroad Passenger Corporation* v. *Morgan*, 536 U. S. 101 (2002)); *post,* at 8, with *infra*, at 15, n. 16 (describing *Patterson* v. *Hewitt*, 195 U. S. 309 (1904)). Yet tellingly, the dissent has come up with no case in which this Court has approved the application of laches to bar a claim for damages brought within the time allowed by a federal statute of limitations. There is nothing at all "differen[t]," see *post,* at 12, about copyright cases in this regard.

## IV

We turn now to MGM's principal arguments regarding the contemporary scope of the laches defense, all of them embraced by the dissent.

## A

Laches is listed among affirmative defenses, along with, but discrete from, the statute of limitations, in Federal Rule of Civil Procedure 8(c). Accordingly, MGM maintains, the plea is "available . . . in every civil action" to bar all forms of relief. Tr. of Oral Arg. 43; see Brief for Respondents 40. To the Court's question, could laches apply where there is an ordinary six-year statute of limitations, MGM's counsel responded yes, case-specific circumstances might warrant a ruling that a suit brought in year five came too late. Tr. of Oral Arg. 52; see *id.*, at 41.

The expansive role for laches MGM envisions careens away from understandings, past and present, of the essentially gap-filling, not legislation-overriding, office of laches. Nothing in this Court's precedent suggests a doctrine of such sweep. Quite the contrary, we have never applied laches to bar in their entirety claims for discrete wrongs occurring within a federally prescribed limitations pe-

riod.[16] Inviting individual judges to set a time limit other than the one Congress prescribed, we note, would tug against the uniformity Congress sought to achieve when it enacted §507(b). See *supra*, at 3–4.

## B

MGM observes that equitable tolling "is read into every federal statute of limitation," *Holmberg*, 327 U. S., at 397, and asks why laches should not be treated similarly. See Brief for Respondents 23–26; *post,* at 7–8. Tolling, which lengthens the time for commencing a civil action in appropriate circumstances,[17] applies when there is a statute of

———————

[16] MGM pretends otherwise, but the cases on which it relies do not carry the load MGM would put on them. *Morgan*, described *supra*, at 6, n. 7, is apparently MGM's best case, for it is cited 13 times in MGM's brief. See Brief for Respondents 8, 9, 14, 16, 18, 19, 25, 31, 34, 35, 36, 40, 47; *post,* at 1, 7, 10–11. *Morgan*, however, does not so much as hint that laches may bar claims for discrete wrongs, all of them occurring within a federal limitations period. Part II–A of that opinion, dealing with the separate-accrual rule, held that "[e]ach discrete discriminatory act starts a new clock for filing charges alleging that act," regardless of whether "past acts" are time barred. 536 U. S., at 113. Parts II–B and II–C of the opinion then *distinguished* separately accruing wrongs from hostile-work-environment claims, cumulative in effect and extending over long periods of time. *Id.*, at 115–117, 121. Laches could be invoked, the Court reasoned, to limit the continuing violation doctrine's potential to rescue *untimely* claims, not claims accruing separately within the limitations period.

*Bay Area Laundry*, described, along with *Morgan*, *supra*, at 6, n. 7, is similarly featured by MGM. See also *post,* at 7–8, 11. But that opinion considered laches only in the context of a federal statute calling for action "[a]s soon as practicable." 29 U. S. C. §1399(b)(1); see 522 U. S., at 205. *Patterson* v. *Hewitt*, 195 U. S. 309 (1904), described by MGM as a case resembling Petrella's, see Tr. of Oral Arg. 32–33, 53, barred equitable claims that were timely under *state* law. When state law was the reference, federal courts sometimes applied laches as a further control. See *supra*, at 3–4; *Russel* v. *Todd*, 309 U. S. 280, 288, n. 1 (1940) ("Laches may bar equitable remedy before the local statute has run."). No federal statute of limitations figured in *Patterson*.

[17] *E.g.,* a party's infancy or mental disability, absence of the defend-

limitations; it is, in effect, a rule of interpretation tied to that limit. See *Young* v. *United States*, 535 U. S. 43, 49–50 (2002); *Johnson* v. *Railway Express Agency, Inc.*, 421 U. S. 454, 464 (1975).[18]  Laches, in contrast, originally served as a guide when no statute of limitations controlled the claim; it can scarcely be described as a rule for interpreting a statutory prescription.  That is so here, because the statute, §507(b), makes the starting trigger an infringing act committed three years back from the commencement of suit, while laches, as conceived by the Ninth Circuit and advanced by MGM, makes the presumptive trigger the defendant's *initial* infringing act.  See 695 F. 3d, at 951; Brief for United States 16.

C

MGM insists that the defense of laches must be available to prevent a copyright owner from sitting still, doing nothing, waiting to see what the outcome of an alleged infringer's investment will be.  See Brief for Respondents 48.  In this case, MGM stresses, "[Petrella] *conceded* that she waited to file because 'the film was deeply in debt and in the red and would probably never recoup.'"  *Id.*, at 47 (quoting from App. 110).  The Ninth Circuit similarly faulted Petrella for waiting to sue until the film Raging Bull "made money."  695 F. 3d, at 953 (internal quotation marks omitted).  See also *post,* at 3–6 (deploring plaintiffs who wait to see whether the allegedly infringing work makes money).

It is hardly incumbent on copyright owners, however, to challenge each and every actionable infringement.  And

---

ant from the jurisdiction, fraudulent concealment.  See S. Rep. No. 1014, 85th Cong., 1st Sess., 2–3 (1957) (hereinafter Senate Report).

[18] The legislative history to which the dissent refers, *post,* at 7, speaks of "equitable situations on which the statute of limitations is generally suspended," Senate Report 3, and says nothing about laches shrinking the time Congress allowed.

there is nothing untoward about waiting to see whether an infringer's exploitation undercuts the value of the copyrighted work, has no effect on the original work, or even complements it. Fan sites prompted by a book or film, for example, may benefit the copyright owner. See Wu, Tolerated Use, 31 Colum. J. L. & Arts 617, 619–620 (2008). Even if an infringement is harmful, the harm may be too small to justify the cost of litigation.

If the rule were, as MGM urges, "sue soon, or forever hold your peace," copyright owners would have to mount a federal case fast to stop seemingly innocuous infringements, lest those infringements eventually grow in magnitude. Section 507(b)'s three-year limitations period, however, coupled to the separate-accrual rule, see *supra,* at 3–6, avoids such litigation profusion. It allows a copyright owner to defer suit until she can estimate whether litigation is worth the candle. She will miss out on damages for periods prior to the three-year look-back, but her right to prospective injunctive relief should, in most cases, remain unaltered.[19]

### D

MGM points to the danger that evidence needed or useful to defend against liability will be lost during a copyright owner's inaction. Brief for Respondents 37–38; see *post,* at 2–4.[20] Recall, however, that Congress provided for reversionary renewal rights exercisable by an author's heirs, rights that can be exercised, at the earliest for pre-

––––––––––

[19] The dissent worries that a plaintiff might sue for profits "every three years . . . until the copyright expires." *Post,* at 5; see *post,* at 2. That suggestion neglects to note that a plaintiff who proves infringement will likely gain forward-looking injunctive relief stopping the defendant's repetition of infringing acts.

[20] As earlier noted, see *supra,* at 10, n. 11, the Court of Appeals did not reach the question whether evidentiary prejudice existed. 695 F. 3d, at 953.

1978 copyrights, 28 years after a work was written and copyrighted. See, *supra*, at 2–3. At that time, the author, and perhaps other witnesses to the creation of the work, will be dead. See *supra*, at 7. Congress must have been aware that the passage of time and the author's death could cause a loss or dilution of evidence. Congress chose, nonetheless, to give the author's family "a second chance to obtain fair remuneration." *Stewart*, 495 U. S., at 220.

Moreover, a copyright plaintiff bears the burden of proving infringement. See 3 W. Patry, Copyright §9.4, p. 9–18 (2013) (hereinafter Patry) ("As in other civil litigation, a copyright owner bears the burden of establishing a prima facie case."). But cf. *post,* at 4 (overlooking plaintiff's burden to show infringement and the absence of any burden upon the defendant "to prove that it did not infringe"). Any hindrance caused by the unavailability of evidence, therefore, is at least as likely to affect plaintiffs as it is to disadvantage defendants. That is so in cases of the kind Petrella is pursuing, for a deceased author most probably would have supported his heir's claim.

The registration mechanism, we further note, reduces the need for extrinsic evidence. Although registration is "permissive," both the certificate and the original work must be on file with the Copyright Office before a copyright owner can sue for infringement. §§408(b), 411(a). Key evidence in the litigation, then, will be the certificate, the original work, and the allegedly infringing work. And the adjudication will often turn on the factfinder's direct comparison of the original and the infringing works, *i.e.*, on the factfinder's "good eyes and common sense" in comparing the two works' "total concept and overall feel." *Peter F. Gaito Architecture, LLC* v. *Simone Development Corp.*, 602 F. 3d 57, 66 (CA2 2010) (internal quotation marks omitted).

E

Finally, when a copyright owner engages in intentionally misleading representations concerning his abstention from suit, and the alleged infringer detrimentally relies on the copyright owner's deception, the doctrine of estoppel may bar the copyright owner's claims completely, eliminating all potential remedies. See 6 Patry §20:58, at 20–110 to 20–112.[21] The test for estoppel is more exacting than the test for laches, and the two defenses are differently oriented. The gravamen of estoppel, a defense long recognized as available in actions at law, see *Wehrman* v. *Conklin*, 155 U. S. 314, 327 (1894), is misleading and consequent loss, see 6 Patry §20:58, at 20–110 to 20–112. Delay may be involved, but is not an element of the defense. For laches, timeliness is the essential element. In contrast to laches, urged by MGM entirely to override the statute of limitations Congress prescribed, estoppel does not undermine Congress' prescription, for it rests on misleading, whether engaged in early on, or later in time.

Stating that the Ninth Circuit "ha[d] taken a wrong turn in its formulation and application of laches in copyright cases," Judge Fletcher called for fresh consideration of the issue. 695 F. 3d, at 959. "A recognition of the distinction between . . . estoppel and laches," he suggested, "would be a good place to start." *Ibid.* We agree.

V

The courts below summarily disposed of Petrella's case based on laches, preventing adjudication of any of her claims on the merits and foreclosing the possibility of any form of relief. That disposition, we have explained, was erroneous. Congress' time provisions secured to authors a

---

[21] Although MGM, in its answer to Petrella's complaint, separately raised both laches and estoppel as affirmative defenses, see Defendants' Answer to Plaintiff's Complaint in No. CV 09–0072 (CD Cal.), the courts below did not address the estoppel plea.

copyright term of long duration, and a right to sue for infringement occurring no more than three years back from the time of suit. That regime leaves "little place" for a doctrine that would further limit the timeliness of a copyright owner's suit. See 1 Dobbs §2.6(1), at 152. In extraordinary circumstances, however, the consequences of a delay in commencing suit may be of sufficient magnitude to warrant, at the very outset of the litigation, curtailment of the relief equitably awardable.

*Chirco* v. *Crosswinds Communities, Inc.*, 474 F. 3d 227 (CA6 2007), is illustrative. In that case, the defendants were alleged to have used without permission, in planning and building a housing development, the plaintiffs' copyrighted architectural design. Long aware of the defendants' project, the plaintiffs took no steps to halt the housing development until more than 168 units were built, 109 of which were occupied. *Id.*, at 230. Although the action was filed within §507(b)'s three-year statute of limitations, the District Court granted summary judgment to the defendants, dismissing the entire case on grounds of laches. The trial court's rejection of the entire suit could not stand, the Court of Appeals explained, for it was not within the Judiciary's ken to debate the wisdom of §507(b)'s three-year look-back prescription. *Id.*, at 235. Nevertheless, the Court of Appeals affirmed the District Court's judgment to this extent: The plaintiffs, even if they might succeed in proving infringement of their copyrighted design, would not be entitled to an order mandating destruction of the housing project. That relief would be inequitable, the Sixth Circuit held, for two reasons: the plaintiffs knew of the defendants' construction plans before the defendants broke ground, yet failed to take readily available measures to stop the project; and the requested relief would "work an *unjust* hardship" upon the defendants and innocent third parties. *Id.,* at 236. See also *New Era Publications Int'l* v. *Henry Holt & Co.*, 873 F. 2d 576, 584–

585 (CA2 1989) (despite awareness since 1986 that book containing allegedly infringing material would be published in the United States, copyright owner did not seek a restraining order until 1988, after the book had been printed, packed, and shipped; as injunctive relief "would [have] result[ed] in the total destruction of the work," the court "relegat[ed plaintiff] to its damages remedy").

In sum, the courts below erred in treating laches as a complete bar to Petrella's copyright infringement suit. The action was commenced within the bounds of §507(b), the Act's time-to-sue prescription, and does not present extraordinary circumstances of the kind involved in *Chirco* and *New Era*. Petrella notified MGM of her copyright claims *before* MGM invested millions of dollars in creating a new edition of Raging Bull. And the equitable relief Petrella seeks—*e.g.,* disgorgement of unjust gains and an injunction against future infringement—would not result in "total destruction" of the film, or anything close to it. See *New Era*, 873 F. 2d, at 584. MGM released Raging Bull more than three decades ago and has marketed it continuously since then. Allowing Petrella's suit to go forward will put at risk only a fraction of the income MGM has earned during that period and will work no unjust hardship on innocent third parties, such as consumers who have purchased copies of Raging Bull. Cf. *Chirco*, 474 F. 3d, at 235–236 (destruction remedy would have ousted families from recently purchased homes). The circumstances here may or may not (we need not decide) warrant limiting relief at the remedial stage, but they are not sufficiently extraordinary to justify threshold dismissal.

Should Petrella ultimately prevail on the merits, the District Court, in determining appropriate injunctive relief and assessing profits, may take account of her delay in commencing suit. See *supra,* at 1–2, 11–12. In doing so, however, that court should closely examine MGM's alleged

reliance on Petrella's delay.[22]   This examination should take account of MGM's early knowledge of Petrella's claims, the protection MGM might have achieved through pursuit of a declaratory judgment action, the extent to which MGM's investment was protected by the separate-accrual rule, the court's authority to order injunctive relief "on such terms as it may deem reasonable," §502(a), and any other considerations that would justify adjusting injunctive relief or profits.  See *Haas* v. *Leo Feist, Inc.*, 234 F. 105, 107–108 (SDNY 1916) (adjudicating copyright infringement suit on the merits and decreeing injunctive relief, but observing that, in awarding profits, account may be taken of copyright owner's inaction until infringer had spent large sums exploiting the work at issue).  See also Tr. of Oral Arg. 23 (Government observation that, in fashioning equitable remedies, court has considerable leeway; it could, for example, allow MGM to continue using Raging Bull as a derivative work upon payment of a reasonable royalty to Petrella).  Whatever adjustments may be in order in awarding injunctive relief, and in accounting for MGM's gains and profits, on the facts thus far presented, there is no evident basis for immunizing MGM's present and future uses of the copyrighted work, free from any obligation to pay royalties.

\*    \*    \*

For the reasons stated, the judgment of the United States Court of Appeals for the Ninth Circuit is reversed, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*

---

[22] While reliance or its absence may figure importantly in this case, we do not suggest that reliance is in all cases a *sine qua non* for adjustment of injunctive relief or profits.

# SUPREME COURT OF THE UNITED STATES

_____

No. 12–1315

_____

## PAULA PETRELLA, PETITIONER *v.* METRO-GOLDWYN-MAYER, INC., ET AL.

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE NINTH CIRCUIT

[May 19, 2014]

JUSTICE BREYER, with whom THE CHIEF JUSTICE, and JUSTICE KENNEDY join, dissenting.

Legal systems contain doctrines that help courts avoid the unfairness that might arise were legal rules to apply strictly to every case no matter how unusual the circumstances. "[T]he nature of the equitable," Aristotle long ago observed, is "a correction of law where it is defective owing to its universality." Nicomachean Ethics 99 (D. Ross transl. L. Brown ed. 2009). Laches is one such equitable doctrine. It applies in those extraordinary cases where the plaintiff "unreasonably delays in filing a suit," *National Railroad Passenger Corporation* v. *Morgan*, 536 U. S. 101, 121 (2002), and, as a result, causes "unjust hardship" to the defendant, *Chirco* v. *Crosswinds Communities, Inc.*, 474 F. 3d 227, 236 (CA6 2007) (emphasis deleted). Its purpose is to avoid "inequity." *Galliher* v. *Cadwell*, 145 U. S. 368, 373 (1892). And, as Learned Hand pointed out, it may well be

> "inequitable for the owner of a copyright, with full notice of an intended infringement, to stand inactive while the proposed infringer spends large sums of money in its exploitation, and to intervene only when his speculation has proved a success." *Haas* v. *Leo Feist, Inc.*, 234 F. 105, 108 (SDNY 1916).

Today's decision disables federal courts from addressing that inequity. I respectfully dissent.

I

Circumstances warranting the application of laches in the context of copyright claims are not difficult to imagine. The 3-year limitations period under the Copyright Act may seem brief, but it is not. 17 U. S. C. §507(b). That is because it is a rolling limitations period, which restarts upon each "separate accrual" of a claim. See *ante,* at 5; 6 W. Patry, Copyright §20:23, pp. 20–44 to 20–46 (2013). If a defendant reproduces or sells an infringing work on a continuing basis, a plaintiff can sue every 3 years until the copyright term expires—which may be up to 70 years after the author's death. §302(a) (works created after January 1, 1978, are protected until 70 years after the author's death); §304(a) (works created before January 1, 1978, are protected for 28 years plus a 67-year renewal period). If, for example, a work earns no money for 20 years, but then, after development expenses have been incurred, it earns profits for the next 30, a plaintiff can sue in year 21 and at regular 3-year intervals thereafter. Each time the plaintiff will collect the defendant's profits earned during the prior three years, unless he settles for a lump sum along the way. The defendant will recoup no more than his outlays and any "elements of profit attributable to factors other than the copyrighted work." §§504(a)(1), (b).

A 20-year delay in bringing suit could easily prove inequitable. Suppose, for example, the plaintiff has deliberately waited for the death of witnesses who might prove the existence of understandings about a license to reproduce the copyrighted work, or who might show that the plaintiff's work was in fact derived from *older* copyrighted materials that the defendant has licensed. Or, suppose the plaintiff has delayed in bringing suit because he wants to avoid bargaining with the defendant up front over a

license. He knows that if he delays legal action, and the defendant invests time, effort, and resources into making the derivative product, the plaintiff will be in a much stronger position to obtain favorable licensing terms through settlement. Or, suppose the plaintiff has waited until he becomes certain that the defendant's production bet paid off, that the derivative work did and would continue to earn money, and that the plaintiff has a chance of obtaining, say, an 80% share of what is now a 90% pure profit stream. (N. B. The plaintiff's profits recovery will be reduced by any "deductible expenses" incurred by the defendant in producing the work, and by any "elements of profits attributable to factors other than the copyrighted work," §504(b)). Or, suppose that all of these circumstances exist together.

Cases that present these kinds of delays are not imaginary. One can easily find examples from the lower courts where plaintiffs have brought claims years after they accrued and where delay-related inequity resulted. See, *e.g., Ory* v. *McDonald*, 141 Fed. Appx. 581, 583 (CA9 2005), aff'g 2003 WL 22909286, \*1 (CD Cal., Aug. 5, 2003) (claim that a 1960's song infringed the "hook or riff" from the 1926 song "Muskrat Ramble," brought more than 30 years after the song was released); *Danjaq LLC* v. *Sony Corp.*, 263 F. 3d 942, 952–956 (CA9 2001) (claim that seven James Bond films infringed a copyright to a screenplay, brought 19 to 36 years after the films were released, and where "many of the key figures in the creation of the James Bond movies ha[d] died" and "many of the relevant records [went] missing"); *Jackson* v. *Axton*, 25 F. 3d 884, 889 (CA9 1994), overruled on other grounds, 510 U. S. 517 (claim of coauthorship of the song "Joy to the World," brought 17 years after the plaintiff learned of his claim such that memories faded, the original paper containing the lyrics was lost, the recording studio (with its records) closed, and the defendant had "arranged his business

affairs around the Song" for years); *Newsome* v. *Brown*, 2005 WL 627639, *8–*9 (SDNY, Mar. 16, 2005) (claim regarding the song "It's a Man's World," brought 40 years after first accrual, where the plaintiff's memory had faded and a key piece of evidence was destroyed by fire). See also *Chirco*, 474 F. 3d, at 230–231, 234–236 (claim that condominium design infringed plaintiff's design, brought only 2.5 years (or so) after claim accrued but after condominium was built, apartments were sold, and 109 families had moved in).

Consider, too, the present case. The petitioner claims the MGM film Raging Bull violated a copyright originally owned by her father, which she inherited and then renewed in 1991. She waited 18 years after renewing the copyright, until 2009, to bring suit. During those 18 years, MGM spent millions of dollars developing different editions of, and marketing, the film. See App. to Pet. for Cert. 13a. MGM also entered into numerous licensing agreements, some of which allowed television networks to broadcast the film through 2015. *Id.*, at 14a. Meanwhile, three key witness died or became unavailable, making it more difficult for MGM to prove that it did not infringe the petitioner's copyright (either because the 1963 screenplay was in fact derived from a different book, the rights to which MGM owned under a nonchallenged license, or because MGM held a license to the screenplay under a 1976 agreement that it signed with Jake LaMotta, who coauthored the screenplay with the petitioner's father, see *id.* at 3a, 5a; App. 128–129, 257–258, 266–267). Consequently, I believe the Court of Appeals acted lawfully in dismissing the suit due to laches.

Long delays do not automatically prove inequity, but, depending upon the circumstances, they raise that possibility. Indeed, suppose that that the copyright-holders in the song cases cited above, or their heirs, facing sudden revivals in demand or eventual deaths of witnesses, had

brought their claims 50, or even 60 years after those claims first accrued.  Or suppose that the loss of evidence was clearly critical to the defendants' abilities to prove their cases.  The Court holds that insofar as a copyright claim seeks damages, a court cannot *ever* apply laches, irrespective of the length of the plaintiff's delay, the amount of the harm that it caused, or the inequity of permitting the action to go forward.

## II

Why should laches not be available in an appropriate case?  Consider the reasons the majority offers.  First, the majority says that the 3-year "copyright statute of limitations . . . itself takes account of delay," and so additional safeguards like laches are not needed.  *Ante,* at 11.  I agree that sometimes that is so.  But I also fear that sometimes it is not.  The majority correctly points out that the limitations period limits the retrospective relief a plaintiff can recover.  It imposes a cap equal to the profits earned during the prior three years, in addition to any actual damages sustained during this time.  *Ibid.*; §504(b).  Thus, if the plaintiff waits from, say, 1980 until 2001 to bring suit, she cannot recover profits for the 1980 to 1998 period.  But she can recover the defendant's profits from 1998 through 2001, which might be precisely when net revenues turned positive.  And she can sue every three years thereafter until the copyright expires, perhaps in the year 2060.  If the plaintiff's suit involves the type of inequitable circumstances I have described, her ability to recover profits from 1998 to 2001 and until the copyright expires could be just the kind of unfairness that laches is designed to prevent.

Second, the majority points out that the plaintiff can recover only the defendant's profits less "'deductible expenses' incurred in generating those profits." *Ante,* at 12 (quoting §504(b)).  In other words, the majority takes assurance from the fact that the Act enables the defendant

to recoup his outlays in developing or selling the allegedly infringing work. Again, sometimes that fact will prevent inequitable results. But sometimes it will not. A plaintiff's delay may mean that the defendant has already recovered the majority of his expenses, and what is left is primarily profit. It may mean that the defendant has dedicated decades of his life to producing the work, such that the loss of a future profit stream (even if he can recover past expenses) is tantamount to the loss of any income in later years. And in circumstances such as those described, it could prove inequitable to give the profit to a plaintiff who has unnecessarily delayed in filing an action. Simply put, the "deductible expenses" provision does not protect the defendant from the potential inequity highlighted by Judge Hand nearly 100 years ago in his influential copyright opinion. That is, it does not stop a copyright-holder (or his heirs) from "stand[ing] inactive while the proposed infringer spends large sums of money" in a risky venture; appearing on the scene only when the venture has proved a success; and thereby collecting substantially more money than he could have obtained at the outset, had he bargained with the investor over a license and royalty fee. *Haas*, 234 F., at 108. But cf. *id.,* at 108–109 (plaintiff to receive injunctive relief since one of the defendants was a "deliberate pirate," but profit award to be potentially reduced in light of laches).

Third, the majority says that "[i]nviting individual judges to set a time limit other than the one Congress prescribed" in the Copyright Act would "tug against the uniformity Congress sought to achieve when it enacted §507(b)." *Ante,* at 15. But why does the majority believe that part of what Congress intended to "achieve" was the elimination of the equitable defense of laches? As the majority recognizes, Congress enacted a uniform statute of limitations for copyright claims in 1957 so that federal courts, in determining timeliness, no longer had to borrow

from state law which varied from place to place. See *ante,* at 3–4. Nothing in the 1957 Act—or anywhere else in the text of the copyright statute—indicates that Congress also sought to bar the operation of laches. The Copyright Act is silent on the subject. And silence is consistent, not inconsistent, with the application of equitable doctrines.

For one thing, the legislative history for §507 shows that Congress chose not to "specifically enumerat[e] certain equitable considerations which might be advanced in connection with civil copyright actions" because it understood that "'[f]ederal district courts, generally, recognize these equitable defenses anyway.'" S. Rep. No. 1014, 85th Cong., 1st Sess., 2–3 (1957) (quoting the House Judiciary Committee). Courts prior to 1957 had often applied laches in federal copyright cases. See, *e.g., Callaghan* v. *Myers*, 128 U. S. 617, 658–659 (1888) (assuming laches was an available defense in a copyright suit); *Edwin L. Wiegand Co.* v. *Harold E. Trent Co.*, 122 F. 2d 920, 925 (CA3 1941) (applying laches to bar a copyright suit); *D. O. Haynes & Co.* v. *Druggists' Circular*, 32 F. 2d 215, 216–218 (CA2 1929) (same). Congress expected they would continue to do so.

Furthermore, this Court has held that federal courts may "appl[y] equitable doctrines that may toll *or limit* the time period" for suit when applying a statute of limitations, because a statutory "filing period" is a "requirement" subject to adjustment "'when equity so requires.'" *Morgan*, 536 U. S., at 121–122 (quoting *Zipes* v. *Trans World Airlines, Inc.*, 455 U. S. 385, 398 (1982); emphasis added). This Court has read laches into statutes of limitations otherwise silent on the topic of equitable doctrines in a multitude of contexts, as have lower courts. See, *e.g., Morgan*, *supra*, at 121 ("an employer may raise a laches defense" under Title VII); *Bay Area Laundry and Dry Cleaning Pension Trust Fund* v. *Ferbar Corp. of Cal.*, 522 U. S. 192, 205 (1997) (similar, in respect to suits under the

Multiemployer Pension Plan Amendments Act of 1980 (MPPAA)); *Abbott Laboratories* v. *Gardner*, 387 U. S. 136, 155 (1967) (similar, in respect to an action for declaratory and injunctive relief under the Administrative Procedure Act); *Patterson* v. *Hewitt*, 195 U. S. 309, 319–320 (1904) (similar, in the case of a property action brought within New Mexico's statute of limitations); *Alsop* v. *Riker*, 155 U. S. 448, 460 (1894) (holding that "independently of the statute of limitations," the contract action was barred "because of laches"); *Teamsters & Employers Welfare Trust of Ill.* v. *Gorman Bros. Ready Mix*, 283 F. 3d 877, 883 (CA7 2002) (laches available "in a suit against an [Employee Retirement Income Security Act of 1974] (ERISA)] plan for benefits"); *Hot Wax, Inc.* v. *Turtle Wax, Inc.*, 191 F. 3d 813, 822–823 (CA7 1999) (laches available in a Lanham Act suit filed within the limitations period). Unless Congress indicates otherwise, courts normally assume that equitable rules continue to operate alongside limitations periods, and that equity applies both to plaintiffs and to defendants. See *Astoria Fed. Sav. & Loan Assn.* v. *Solimino*, 501 U. S. 104, 108 (1991) ("Congress is understood to legislate against a background of common-law adjudicatory principles" and to incorporate them "except when a statutory purpose to the contrary is evident" (internal quotation marks and citation omitted)); *Porter* v. *Warner Holding Co.*, 328 U. S. 395, 398 (1946) ("Unless otherwise provided by statute, all the inherent equitable powers of the District Court are available for the proper and complete exercise of that jurisdiction").

The Court today comes to a different conclusion. It reads §507(b)'s silence as preserving doctrines that lengthen the period for suit when equitable considerations favor the plaintiff (*e.g.,* equitable tolling), but as foreclosing a doctrine that would shorten the period when equity favors the defendant (*i.e.,* laches). See *ante,* at 15–16, 19–20. I do not understand the logic of reading a silent stat-

ute in this manner.

Fourth, the majority defends its rule by observing that laches was "developed by courts of equity," and that this Court has "cautioned against invoking laches to bar legal relief" even following the merger of law and equity in 1938. *Ante,* at 12–13. The majority refers to three cases that offer support for this proposition, but none is determinative. In the first, *Holmberg* v. *Armbrecht,* 327 U. S. 392 (1946), the Court said:

> "If Congress explicitly puts a limit upon the time for enforcing a right which it created, there is an end of the matter.
>
> .        .        .        .        .
>
> "Traditionally and for good reasons, statutes of limitation are not controlling measures of equitable relief." *Id.,* at 395–396.

This statement, however, constituted part of the Court's explanation as to why a federal statute, silent about limitations, should be applied consistently with "historic principles of equity in the enforcement of federally-created equitable rights" rather than with New York's statute of limitations. *Id.,* at 395. The case had nothing to do with whether laches governs in actions at law. The lawsuit in *Holmberg* had been brought "in equity," and the Court remanded for a determination of whether the petitioners were "chargeable with laches." *Id.,* at 393, 397.

The second case the majority cites, *Merck & Co.* v. *Reynolds,* 559 U. S. 633 (2010), provides some additional support, but not much. There, the Court cited a 1935 case for the proposition that "'[l]aches within the term of the statute of limitations is no defense at law.'" *Id.,* at 652 (quoting *United States* v. *Mack,* 295 U. S. 480, 489 (1935)). But *Merck* concerned a federal securities statute that contained both a 2-year statute of limitations, running from the time of "discovery," and a 5-year statute of repose,

running from the time of a "violation." *Id.,* at 638 (citing 28 U. S. C. §1658(b)). Given that repose statutes set "an outside limit" on suit and are generally "inconsistent with tolling" and similar equitable doctrines, the Court held that the 2-year limitations period at issue was not subject to an "inquiry notice" rule or, by analogy, to laches. *Lampf, Pleva, Lipkind, Prupis & Petigrow* v. *Gilbertson*, 501 U. S. 350, 363 (1991) (internal quotation marks and citation omitted); *Merck, supra,* at 650–652. *Merck* did not suggest that statutes of limitations are always or normally inconsistent with equitable doctrines when plaintiffs seek damages. It simply found additional support for its conclusion in a case that this Court decided *before* the merger of law and equity. And here, unlike in *Merck*, the statute of limitations is not accompanied by a corollary statute of repose.

Third, in *County of Oneida* v. *Oneida Indian Nation of N. Y.*, 470 U. S. 226 (1985), the Court said in a footnote that "application of the equitable defense of laches in an action at law would be novel indeed." *Id.,* at 245, n. 16. This statement was made in light of special policies related to Indian tribes, which the Court went on to discuss in the following sentences. *Ibid.* In any event, *Oneida* did not resolve whether laches was available to the defendants, for the lower court had not ruled on the issue. *Id.,* at 244–245.

In sum, there is no reason to believe that the Court meant any of its statements in *Holmberg*, *Merck*, or *Oneida* to announce a general rule about the availability of laches in actions for legal relief, whenever Congress provides a statute of limitations. To the contrary, the Court has said more than once that a defendant could invoke laches in an action for damages (even though no assertion of the defense had actually been made in the case), despite a fixed statute of limitations. See *Morgan*, 536 U. S., at 116–119, 121–122 (laches available in hostile work envi-

ronment claims seeking damages under Title VII); *Bay Area Laundry*, 522 U. S., at 205 (laches available in actions for "withdrawal liability assessment[s]" under the MPPAA). Lower courts have come to similar holdings in a wide array of circumstances—often approving not only of the availability of the laches defense, but of its application to the case at hand. *E.g., Cayuga Indian Nation of N. Y.* v. *Pataki*, 413 F. 3d 266, 274–277 (CA2 2005) (laches available in a "possessory land claim" in which the District Court awarded damages, whether "characterized as an action at law or in equity," and dismissing the action due to laches); *Teamsters*, 283 F. 3d, at 881–883 (laches available in suits under ERISA for benefits, but not warranted in that case); *Hot Wax*, 191 F. 3d, at 822–827 ("[T]he application of the doctrine of laches to Hot Wax's Lanham Act claims [requesting damages] by the district court was proper"); *A. C. Aukerman Co.* v. *R. L. Chaides Constr. Co.*, 960 F. 2d 1020, 1030–1032, 1045–1046 (CAFed 1992) (en banc) (laches available in patent suit claiming damages, and remanding for whether the defense was successful); *Cornetta* v. *United States*, 851 F. 2d 1372, 1376–1383 (CAFed 1988) (en banc) (same, in suit seeking backpay). Even if we focus only upon federal copyright litigation, four of the six Circuits to have considered the matter have held that laches can bar claims for legal relief. See 695 F. 3d 946, 956 (CA9 2012) (case below, barring all copyright claims due to laches); *Peter Letterese & Assocs., Inc.* v. *World Inst. of Scientology Enterprises, Int'l*, 533 F. 3d 1287, 1319–1322 (CA11 2008) (laches can bar copyright claims for retrospective damages); *Chirco*, 474 F. 3d, at 234–236 ("laches can be argued 'regardless of whether the suit is at law or in equity,'" and holding that while the plaintiffs could obtain damages and an injunction, their request for additional equitable relief "smack[ed] of the inequity against which Judge Hand cautioned in *Haas* and which the judicial system should abhor" (quoting *Team-*

*sters, supra,* at 881)); *Jacobsen* v. *Deseret Book Co.*, 287 F. 3d 936, 950–951 (CA10 2002) (laches available in "'rare cases,'" and failing to draw a distinction in the type of remedy sought (citation omitted). But see *New Era Publications Int'l* v. *Henry Holt & Co.*, 873 F. 2d 576, 584–585 (CA2 1989) (laches can bar claims for injunctive relief, but not damages, under the Copyright Act); *Lyons Partnership, L. P.* v. *Morris Costumes, Inc.*, 243 F. 3d 789, 798–799 (CA4 2001) (laches unavailable in copyright cases altogether).

Perhaps more importantly, in permitting laches to apply to copyright claims seeking equitable relief but not to those seeking legal relief, the majority places insufficient weight upon the rules and practice of modern litigation. Since 1938, Congress and the Federal Rules have replaced what would once have been actions "at law" and actions "in equity" with the "civil action." Fed. Rule Civ. Proc. 2 ("There is one form of action—the civil action"). A federal civil action is subject to both equitable and legal defenses. Fed. Rule Civ. Proc. 8(c)(1) ("In responding to a pleading, a party must affirmatively state any avoidance or affirmative defense, including: . . . estoppel . . . laches . . . [and] statute of limitations"). Accordingly, since 1938, federal courts have frequently allowed defendants to assert what were formerly equitable defenses—including laches—in what were formerly legal actions. See *supra,* at 10–11 (citing cases). Why should copyright be treated differently? Indeed, the majority concedes that "restitutional remedies" like "profits" (which are often claimed in copyright cases) defy clear classification as "equitable" or "legal." *Ante,* at 2, n. 1 (internal quotation marks omitted). Why should lower courts have to make these uneasy and unnatural distinctions?

Fifth, the majority believes it can prevent the inequities that laches seeks to avoid through the use of a different doctrine, namely equitable estoppel. *Ante,* at 19. I doubt

that is so. As the majority recognizes, "the two defenses are differently oriented." *Ibid.* The "gravamen" of estoppel is a misleading representation by the plaintiff that the defendant relies on to his detriment. 6 Patry, Copyright §20:58, at 20–110 to 20–112. The gravamen of laches is the plaintiff's unreasonable delay, and the consequent prejudice to the defendant. *Id.,* §20:54, at 20–96. Where due to the passage of time, evidence favorable to the defense has disappeared or the defendant has continued to invest in a derivative work, what misleading representation by the plaintiff is there to estop?

In sum, as the majority says, the doctrine of laches may occupy only a "'little place'" in a regime based upon statutes of limitations. *Ante,* at 20 (quoting 1 D. Dobbs, Law of Remedies §2.6(1), p. 152 (2d ed. 1993)). But that place is an important one. In those few and unusual cases where a plaintiff unreasonably delays in bringing suit and consequently causes inequitable harm to the defendant, the doctrine permits a court to bring about a fair result. I see no reason to erase the doctrine from copyright's lexicon, not even in respect to limitations periods applicable to damages actions.

Consequently, with respect, I dissent.