13-3069
Stockbridge-Munsee v. State of New York, et al.

# UNITED STATES COURT OF APPEALS

## FOR THE SECOND CIRCUIT

August Term, 2013

(Argued: June 18, 2014    Decided: June 20, 2014)

Docket No. 13-3069

- - - - - - - - - - - - - - - - - - -x

Stockbridge-Munsee Community,

Plaintiff-Counter-Defendant-
Appellant,

- v.-

State of New York, Mario Cuomo, as Governor of the
State of New York, New York State Department of
Transportation, Franklin White, as Commissioner of
Transportation, Madison County, The County of Madison
New York, Oneida County, New York, Town of Augusta,
New York, Town of Lincoln, New York, Village of
Munnsville, New York,  Town of Smithfield, New York,
Town of Stockbridge, New York, Town of Vernon, New
York,

Defendant-Counter-Claimant-
Appellees,

Oneida Indian Nation of New York,

Defendant-Intervenor-
Appellee.

- - - - - - - - - - - - - - - - - - -x

Before: JACOBS, STRAUB, and RAGGI, Circuit Judges.

The Stockbridge-Munsee Community ("Stockbridge"), a federally

recognized Indian tribe, appeals from a judgment of the United States District

Court for the Northern District of New York (Kahn, J.), dismissing its claims to

title of a thirty-six square mile tract of land in upstate New York.  It is well-settled

that claims by an Indian tribe alleging that it was unlawfully dispossessed of land

early in America's history are barred by the equitable principles of laches,

acquiescence, and impossibility.  We therefore affirm.

DON B. MILLER, Don B. Miller, P.C.,
Boulder, Colorado (Justin E. Driscoll, III,
Brown & Weinraub, PLLC, New York, New
York, on the brief), for Appellant.

JEFFREY W. LANG, Assistant Solicitor
General (Barbara D. Underwood, Solicitor
General, Denise A. Hartman, Assistant
Solicitor General, on the brief), for Eric T.
Schneiderman, Attorney General of the
State of New York, Albany, New York, for
State Defendants.

David H. Tennant (Erik A. Goergen, on the brief), Nixon Peabody LLP, Rochester, New York, for County-Municipal Defendants.

MICHAEL R. SMITH (David A. Reiser, Zuckerman Spaeder LLP, Washington, D.C.; Peter D. Carmen, Meghan M. Beakman, Oneida Nation Legal Department, Verona, New York, on the brief), Zuckerman Spaeder LLP, Washington, D.C.

Per Curiam:

The Stockbridge-Munsee Community ("Stockbridge"), a federally recognized Indian tribe residing on a federal Indian reservation in Wisconsin, appeals from a judgment of the United States District Court for the Northern District of New York (Kahn, J.), dismissing its claims asserting title of a tract of land in upstate New York. It is well-settled that claims by an Indian tribe alleging that it was unlawfully dispossessed of land early in America's history are barred by the equitable principles of laches, acquiescence, and impossibility. We therefore affirm.

**I**

In 1986, the Stockbridge filed suit against the State of New York, certain state officials and agencies (collectively, the "State defendants"), and certain

3

counties, towns, and villages (collectively, the "county and municipal defendants"), seeking trespass damages and eviction from roughly thirty-six square miles of land located between Syracuse and Utica, New York. The Oneida Indian Nation ("Oneida") intervened as a defendant, asserting that the land claimed by the Stockbridge is part of Oneida's historic reservation. The case has been stayed for various reasons.

The amended complaint, filed on August 5, 2004, asserts claims under federal common law, the Nonintercourse Act (25 U.S.C. § 177), and the 1794 Treaty of Canandaigua. These legal sources allegedly invalidate any sale of land by an Indian tribe without the consent of the federal government. According to the amended complaint, the State of New York's title to Stockbridge land, acquired in fifteen transactions (with the Stockbridge) between the years 1818 to 1842, are void because none of the transactions had the consent or ratification of the United States.

After the filing of the amended complaint, the case was stayed to allow the parties to pursue settlement. The stay was lifted in 2011, after settlement negotiations failed. All defendants then moved to dismiss under Fed. R. Civ. P. 12(b)(6) for failure to state a claim. In the alternative, the State defendants and

Oneida also moved to dismiss for lack of subject matter jurisdiction. The district court dismissed all claims, granting the motions of (i) the State of New York and the New York State Department of Transportation on the ground that the Stockbridge had abandoned its claims against these defendants; (ii) the other State defendants on Eleventh Amendment grounds; (iii) the Oneida on tribal sovereign immunity grounds; and (iv) the county and municipal defendants on the ground that the claims were barred by the equitable defense enumerated in City of Sherrill v. Oneida Indian Nation of New York, 544 U.S. 197 (2005) ("Sherrill"). This appeal followed.

**II**

The claims in this case are foreclosed by three decisions that resulted from decades-long litigation conducted by other Iroquois Nations: the Cayuga, Oneida, and Onondaga. See Sherrill, 544 U.S. at 197; Cayuga Indian Nation of N.Y. v. Pataki, 413 F.3d 266 (2d Cir. 2005) ("Cayuga"), cert. denied, 547 U.S. 1128 (2006); Oneida Indian Nation of N.Y. v. County of Oneida, 617 F.3d 114 (2d Cir. 2010) ("Oneida"), cert. denied, 132 S. Ct. 452 (2011); see also Onondaga Nation v. New York, 500 F. App'x 87 (2d Cir. 2012) (summary order), cert. denied 134 S. Ct.

419 (2013). We reach this conclusion upon de novo review of the district court's decision. See Jaghory v. N.Y.S. Dep't of Educ., 131 F.3d 326, 329 (2d Cir. 1997).

First, in Sherrill, the Oneida sought an exemption from municipal property taxes on historic reservation land that they had privately acquired at market value. The Supreme Court held that such a "disruptive remedy" was barred by the "long lapse of time, during which the Oneidas did not seek to revive their sovereign control through equitable relief in court, and the attendant dramatic changes in the character of the properties." Sherrill, 544 U.S. at 216–217. Sherrill invoked doctrines of laches, acquiescence, and impossibility, but declined to apply any rigid test. Id. at 221.

Soon after, this Court decided Cayuga, in which the Cayuga claimed ownership of historic reservation land and sought (inter alia) money damages. 413 F.3d at 269. The district court had awarded the Cayuga nearly $250 million (in an opinion published before Sherrill); but this Court reversed on the ground that the Sherrill equitable bar precluded such relief. Id. at 273, 278. We rejected the Cayuga's argument that an award of money damages (rather than ejectment) would not disrupt settled property interests: "[D]isruptiveness is inherent in the claim itself--which asks this Court to overturn years of settled land ownership--

6

rather than an element of any particular remedy which would flow from [a] possessory land claim." Id. at 275.

Oneida presented yet another native claim to upstate ancestral land. Oneida, 617 F.3d at 114. Attempting to distinguish its case, the Oneida argued that the defendants had "failed to establish the necessary elements of a laches defense." Id. at 117. But we concluded that "[t]his omission . . . [wa]s not ultimately important, as the equitable defense recognized in Sherrill and applied in Cayuga does not focus on the elements of traditional laches but rather more generally on the length of time at issue between an historical injustice and the present day, on the disruptive nature of claims long delayed, and on the degree to which these claims upset the justifiable expectations of individuals and entities far removed from the events giving rise to the plaintiffs' injury." Id. at 127.

In the wake of this trilogy--Sherrill, Cayuga, and Oneida--it is now well-established that Indian land claims asserted generations after an alleged dispossession are inherently disruptive of state and local governance and the settled expectations of current landowners, and are subject to dismissal on the basis of laches, acquiescence, and impossibility. The claims at issue here share all

of these characteristics: the Stockbridge have not resided on the lands at issue since the nineteenth century and its primary reservation lands are located elsewhere (in Wisconsin); the Stockbridge assert a continuing right to possession based on an alleged flaw in the original termination of Indian title; and the allegedly void transfers occurred long ago, during which time the land has been owned and developed by other parties subject to State and local regulation. Such claims are barred by the Sherrill equitable defense.

The recent Supreme Court decision in Petrella v. Metro-Goldwyn-Mayer, Inc., 134 S. Ct. 1962 (2014), does not alter the analysis. Petrella establishes that the equitable defense of laches cannot be used to defeat a claim filed within the Copyright Act's three-year statute of limitations. The Supreme Court commented on the applicability of laches to actions at law generally, but ultimately confined its ruling "to the position that, in face of a statute of limitations enacted by Congress, laches cannot be invoked to bar legal relief." Id. at 1974.

Congress has not fixed a statute of limitations for Indian land claims. See, e.g., Oneida County, N.Y. v. Oneida Indian Nation of N.Y.S., 470 U.S. 226, 253 (1985) ("[N]either petitioners nor we have found any applicable statute of

limitations . . . .").  And even if a statute of limitations applied, "the equitable defense recognized in Sherrill . . . does not focus on the elements of traditional laches."  Oneida, 617 F.3d at 127.  Rather, laches is but "one of several preexisting equitable defenses, along with acquiescence and impossibility, illustrating fundamental principles of equity that preclude[] . . . plaintiffs 'from rekindling embers of sovereignty that long ago grew cold.'"  Id. at 128 (quoting Sherrill, 544 U.S. at 214).

**III**

Subject matter jurisdiction is generally a "threshold question that must be resolved . . . before proceeding to the merits."  Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 88–89 (1998).  Here, it is undisputed that the district court had subject matter jurisdiction over the claims against the county and municipal defendants.  Because "'the substantive issue decided by the District Court'"--the applicability of the Sherrill bar--"'would have been decided by that court'" in any event to dismiss those claims, we may affirm on this ground with respect to all defendants, without reaching the Eleventh Amendment and tribal sovereign

9

immunity issues. <u>Steel Co.</u>, 523 U.S. at 100 (quoting <u>Philbrook v. Glodgett</u>, 421 U.S. 707, 721 (1975)).

For the foregoing reasons, the judgment of the district court is affirmed.