# United States Court of Appeals for the Federal Circuit

---

**SHINNECOCK INDIAN NATION,**
*Plaintiff-Appellant*

v.

**UNITED STATES,**
*Defendant-Appellee*

---

2014-5015

---

Appeal from the United States Court of Federal Claims in No. 1:12-cv-00836-ECH, Chief Judge Emily C. Hewitt.

---

Decided: April 7, 2015

---

STEVEN J. BLOXHAM, Fredericks Peebles & Morgan LLP, Sacramento, CA, argued for plaintiff-appellant. Also represented by TIM HENNESSY, JOHN M. PEEBLES, DARCIE LYNN HOUCK.

JENNIFER SCHELLER NEUMANN, Environment and Natural Resources Division, United States Department of Justice, Washington, DC, argued for defendant-appellee. Also represented by SAM HIRSCH.

---

Before DYK, MAYER, and CLEVENGER, *Circuit Judges.*

MAYER, *Circuit Judge*.

The Shinnecock Indian Nation (the "Nation") appeals a final judgment of the United States Court of Federal Claims dismissing its suit for lack of jurisdiction. *See Shinnecock Indian Nation v. United States*, 112 Fed. Cl. 369 (2013) ("*Court of Federal Claims Decision*"). We affirm in part, vacate in part, and remand.

### BACKGROUND

In June 2005, the Nation filed suit in the United States District Court for the Eastern District of New York "seek[ing] to vindicate its rights to certain lands located in the Town of Southampton in Suffolk County, New York." *Shinnecock Indian Nation v. New York*, No. 05-CV-2887, 2006 WL 3501099, at *1 (E.D.N.Y. Nov. 28, 2006) ("*Land Reclamation Suit*"). The Nation asserted that in 1859 the State of New York enacted legislation allowing thousands of acres of the Nation's land to be wrongfully conveyed to the government of the Town of Southampton. *Id.* at *2. The Nation sought "broad relief," including damages and possessory rights in the disputed lands. *Id.* at *1.

In November 2006, the district court dismissed the Nation's suit. *Id.* at *6. Relying on *City of Sherrill v. Oneida Indian Nation*, 544 U.S. 197, 217–21 (2005), and *Cayuga Indian Nation v. Pataki*, 413 F.3d 266, 273–78 (2d Cir. 2005), the court held that laches barred the Nation's claims. *See Land Reclamation Suit*, 2006 WL 3501099, at *3–5. Although the court acknowledged that the "wrongs" alleged by the Nation were "grave," it emphasized that the Nation had not occupied the disputed lands since 1859. *Id.* at *6. In the court's view, the "disruptive nature" of the Nation's land claims was sufficient to "tip[] the equity scale in favor of dismissal." *Id.* The Nation then appealed to the United States Court of Appeals for the Second Circuit ("Second Circuit"). That appeal remains pending.

On December 5, 2012, the Nation filed an action in the Court of Federal Claims, seeking $1,105,000,000 in money damages, as well as costs, attorney's fees, and "[s]uch other and further relief" as the court "deem[ed] just and proper." *Court of Federal Claims Decision*, 112 Fed. Cl. at 375. The Nation alleged that the United States, "acting through the federal court system . . . denied any and all judicial means of effective redress for the unlawful taking of lands from [the Nation] and its members." *Id.* at 372 (citations and internal quotation marks omitted). In its complaint, the Nation asserted that in failing to provide it with a remedy for the misappropriation of its tribal lands, the United States violated trust obligations arising under both the Non-Intercourse Act, 25 U.S.C. § 177, and the "federal common law (informed by international law norms)." 112 Fed. Cl. at 378.

The government moved to dismiss for lack of jurisdiction, arguing both that the Nation's claims were not ripe for review and that they fell outside the waiver of sovereign immunity provided by the Indian Tucker Act.[1] *Id.* The Nation thereafter sought to amend its complaint to add a "judicial takings" claim alleging that the district court's decision to dismiss its *Land Reclamation Suit* was a compensable taking of a vested property right. *Id.*

The Court of Federal Claims dismissed the Nation's complaint on two alternative grounds. First, the court held that the Nation's claims were not ripe for adjudication because they were predicated upon the district court's judgment in the *Land Reclamation Suit* and that judgment was on appeal. *Id.* at 378–79. Second, the court

---

[1]     The Indian Tucker Act provides a waiver of sovereign immunity for Indian tribal claims that "otherwise would be cognizable in the Court of Federal Claims if the claimant were not an Indian tribe, band or group." 28 U.S.C. § 1505.

held that even if the Nation's claims were ripe for review, it had no jurisdiction to consider them because they did not fall within the Indian Tucker Act's waiver of sovereign immunity. *Id.* at 380–82. The court refused, moreover, to allow the Nation to amend its complaint to add a judicial takings claim, concluding that such an amendment would be "futile." *Id.* at 387. According to the court, because the Nation had not yet "secured a final unreviewable judgment in its favor on its [Non-Intercourse] Act claim," its interest in that claim had not vested and was therefore "not protected by the Takings Clause." *Id.* at 384–85. The court further noted that the Nation had been unable to cite to any "case in which a property owner prevailed on a judicial takings claim . . . ." *Id.* at 386.

The Nation then filed a timely appeal with this court. We have jurisdiction under 28 U.S.C. § 1295(a)(3).

## DISCUSSION

### A. Standard of Review

We review de novo a determination that a claim is not ripe for adjudication. *Morris v. United States*, 392 F.3d 1372, 1375 (Fed. Cir. 2004); *see also Howard W. Heck & Assoc., Inc. v. United States*, 134 F.3d 1468, 1471 (Fed. Cir. 1998). Subject matter jurisdiction is a question of law, which we likewise review de novo. *Rick's Mushroom Serv., Inc. v. United States*, 521 F.3d 1338, 1342 (Fed. Cir. 2008); *Emery Worldwide Airlines, Inc. v. United States*, 264 F.3d 1071, 1078 (Fed. Cir. 2001). We review the denial of a motion to amend a complaint for abuse of discretion. *Tamerlane, Ltd. v. United States*, 550 F.3d 1135, 1147 (Fed. Cir. 2008).

### B. Ripeness

Ripeness is a justiciability doctrine that "prevent[s] the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements . . . ." *Abbott Labs. v. Gardner*, 387 U.S. 136, 148 (1967),

*abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977). Determining whether a dispute is ripe for review requires evaluation of: (1) the "fitness" of the disputed issues for judicial resolution; and (2) "the hardship to the parties of withholding court consideration." *Id.* at 149; *see Sys. Application & Techs., Inc. v. United States*, 691 F.3d 1374, 1383–84 (Fed. Cir. 2012).

As the Court of Federal Claims correctly determined, the Nation's breach of trust claims are not ripe for adjudication. *See* 112 Fed. Cl. at 378–79. The Nation asserts that the United States breached trust obligations, arising under both the Non-Intercourse Act[2] and the federal common law,[3] to protect the Nation's lands and to provide it with effective redress for the misappropriation of those lands by the State of New York.[4] The Nation's breach of trust claims, however, rest on the district court's judgment dismissing its land claims against the State of New York and an appeal of that judgment is pending before

---

[2]　In relevant part, the Non-Intercourse Act provides: "No purchase, grant, lease, or other conveyance of lands, or of any title or claim thereto, from any Indian nation or tribe of Indians, shall be of any validity in law or equity, unless the same be made by treaty or convention entered into pursuant to the Constitution." 25 U.S.C. § 177.

[3]　The Nation asserts that the "federal common law, which has always recognized Indian tribal rights and which incorporates customary international human rights law" guarantees the "right to redress for the unlawful taking and forced dispossession of the Nation and its members from their lands."

[4]　The defendants in the *Land Reclamation Suit* include the State of New York, the County of Suffolk, New York, and the Town of Southampton, New York. *See Land Reclamation Suit*, 2006 WL 3501099, at *2.

the Second Circuit. Until the Second Circuit—and possibly the Supreme Court—have had an opportunity to review, and possibly reverse or revise, the district court's judgment, it would be premature to determine whether the United States breached any trust obligation to provide the Nation with effective redress for the loss of its lands. *See Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580–81 (1985) (emphasizing that a claim is not ripe for adjudication if it rests upon "contingent future events that may not occur as anticipated, or indeed may not occur at all" (citations and internal quotation marks omitted)); *Rothe Dev. Corp. v. Dep't of Def.*, 413 F.3d 1327, 1335 (Fed. Cir. 2005) (explaining that "a case is not ripe if further factual development is required" (citations and internal quotation marks omitted)).

On appeal, the Nation argues that it will be irreparably harmed if adjudication of its breach of trust claims is postponed. It contends that if its claims are not heard now, it "will forever be barred" from asserting those claims by the six-year statute of limitations applicable to suits filed in the Court of Federal Claims. We disagree. "A claim under the Tucker Act . . . first accrues only when all the events which fix the government's alleged liability have occurred . . . ." *Casitas Mun. Water Dist. v. United States*, 708 F.3d 1340, 1359 (Fed. Cir. 2013) (citations and internal quotation marks omitted). As the government acknowledges, "[b]ecause the Nation alleges that the United States harmed it through the federal court system, the Nation's claims (if any) will not accrue and the six year statute of limitations prescribed by 28 U.S.C. § 2501 will not begin to run until the federal court system, not merely the district court, has arrived at a final decision regarding the Nation's claims against the State of New York."

The Nation further contends that its breach of trust claims are now ripe for adjudication because "the potential for the Second Circuit to reverse the dismissal of the

Nation's [Non-Intercourse Act] land claim is more illusory than real." In support, the Nation notes that the Second Circuit has "thrice affirmed" the applicability of the laches doctrine to bar Indian land claims. *See Onondaga Nation v. New York*, 500 F. App'x 87, 89 (2d Cir. 2012); *Oneida Indian Nation v. Cnty. of Oneida*, 617 F.3d 114, 135–37 (2d Cir. 2010); *Cayuga*, 413 F.3d at 274–77; *see also Stockbridge-Munsee Cmty. v. New York*, 756 F.3d 163, 165 (2d Cir. 2014) ("[I]t is now well-established that Indian land claims asserted generations after an alleged dispossession are inherently disruptive of state and local governance and the settled expectations of current land-owners, and are subject to dismissal on the basis of laches, acquiescence, and impossibility."). Until the Nation completes the appellate process, however, there is no way of knowing whether its claims are distinguishable from those at issue in earlier cases. It is possible, moreover, that the Second Circuit will elect to reconsider its laches jurisprudence en banc. Likewise, the Supreme Court could grant certiorari and reverse or modify the Second Circuit's approach to the laches bar, particularly if, as the Nation asserts, that approach is "contrary to longstanding principles of equity, as well as inconsistent with applicable Supreme Court precedent and [c]ongressional legislation and policy." We reject, therefore, the Nation's contention that its breach of trust claims are now ripe for review because its right to appeal the dismissal of its land claim is only "illusory."

## C. Subject Matter Jurisdiction

If a claim is not yet ripe for judicial review, it should generally be dismissed without prejudice. *See, e.g.*, *Casitas*, 708 F.3d at 1343 (affirming the dismissal of a takings claim without prejudice after determining that it was unripe); *Morris*, 392 F.3d at 1378 (affirming the dismissal of a takings claim without prejudice because it was "not ripe as a matter of law"); *see also Barlow & Haun, Inc. v. United States*, 118 Fed. Cl. 597, 615 n.20

(2014) (emphasizing that if a claim is moot or unripe it "should be dismissed as nonjusticiable and not for lack of subject matter jurisdiction"); *Bannum, Inc. v. United States*, 56 Fed. Cl. 453, 462 (2003) ("If a claim is not ripe . . . it must be dismissed without prejudice."). Here, however, the Court of Federal Claims held that the Nation's claims were not ripe for review, but nonetheless proceeded to determine that even if those claims were ripe, they invoked no statute or other source of substantive law sufficient to bring them within the jurisdictional reach of the Indian Tucker Act.[5] *See Court of Federal Claims Decision*, 112 Fed. Cl. at 379–87.

"[T]here is no unyielding jurisdictional hierarchy," and no prohibition precluding a court from dismissing a claim on alternative grounds. *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 578 (1999) (explaining that in appropriate cases a district court can dismiss for lack of personal jurisdiction without first establishing that it has subject matter jurisdiction); *see Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007) (emphasizing "that a federal court has leeway to choose among threshold grounds for denying audience to a case on the merits" (citations and internal quotation marks omitted)); *McGuire v. United States*, 707 F.3d 1351, 1362 (Fed. Cir. 2013) (reversing a determination that a takings claim was ripe for review, but affirming the trial court's

---

[5]    "Although the Indian Tucker Act confers jurisdiction upon the Court of Federal Claims, it is not itself a source of substantive rights. To state a litigable claim, a tribal plaintiff must invoke a rights-creating source of substantive law that can fairly be interpreted as mandating compensation by the Federal Government for the damages sustained." *United States v. Navajo Nation*, 537 U.S. 488, 503 (2003) (citations and internal quotation marks omitted).

judgment in favor of the government because it was clear that the plaintiff lacked the requisite property interest to support a viable takings claim).  The present case, however, involves the unusual situation in which the claims asserted against the United States rest upon the outcome of litigation still pending in another forum.  At the current juncture, the Nation's claims against the United States are merely hypothetical—contingent on the ultimate resolution of its land suit against the State of New York—and we think it is premature as to these claims to make any binding determination as to whether they invoke a money-mandating source of substantive law.  *See Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240 (1937) (explaining that "[a] justiciable controversy [must be] distinguished from a difference or dispute of a hypothetical or abstract character").

In assessing jurisdiction under the Tucker Act, "a single determination controls whether the plaintiff has identified a money-mandating source for purposes of Tucker Act jurisdiction and whether the statute on its merits provides a money-mandating remedy on which the plaintiff can base a cause of action . . . ."  *Adair v. United States*, 497 F.3d 1244, 1251 (Fed. Cir. 2007).  Thus, in a "single step," the Court of Federal Claims "determines both the question of whether [a] statute provides the predicate for its jurisdiction, and lays to rest for purposes of the case before it the question of whether the statute on its merits provides a money-mandating remedy."  *Fisher v. United States*, 402 F.3d 1167, 1173 (Fed. Cir. 2005) (en banc in relevant part).  Accordingly, when the Court of Federal Claims addressed the question of whether the Nation's breach of trust claims fell within the Indian Tucker Act's waiver of sovereign immunity, it necessarily made a determination, on the merits, that the Non-Intercourse Act failed to provide a money-mandating

remedy upon which the Nation could base its cause of action.[6]

"The operation of [a] statute is better grasped when viewed in light of a particular application." *Texas v. United States*, 523 U.S. 296, 301 (1998). Until the litigation now pending in the Second Circuit is finally resolved—and the metes and bounds of the Nation's breach of trust claims against the United States are certain—we think it is premature in the circumstances of this case to make any determination as to whether the Non-Intercourse Act can be construed to provide a predicate for the exercise of jurisdiction over those claims. The role of the federal courts is to provide redress for injuries that are "concrete in both a qualitative and temporal sense." *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990). Because the precise contours of the Nation's breach of trust claims against the United States are at present only conjectural, any ruling on the merits of those claims is "patently advisory" in the circumstances of this case. *Babbitt v. United Farm Workers Nat. Union*, 442 U.S. 289, 304 (1979); *see Elec. Bond & Share Co. v. Sec. & Exch. Comm'n*, 303 U.S. 419, 443 (1938); *Tokyo Kikai Seisakusho, Ltd. v. United States*, 529 F.3d 1352, 1363 (Fed. Cir. 2008).

Adherence to ripeness standards prevents courts from making determinations on the merits of a case before all

---

[6]    The Court of Federal Claims further determined that nothing in the federal common law provided a basis for the exercise of jurisdiction over the Nation's claims. *See Court of Federal Claims Decision*, 112 Fed. Cl. at 382 ("Common law causes of action . . . are not included in [the Tucker Act's] jurisdictional grant." (citations and internal quotation marks omitted)).

the essential facts are in.[7]  *See Williamson Cnty. Reg'l Planning Comm'n v. Hamilton Bank*, 473 U.S. 172, 191 (1985).  Here, multiple possible litigation outcomes and factual developments could impact the Court of Federal Claims' adjudication of the Nation's breach of trust claims.  The Second Circuit could reverse the district court's judgment and afford the Nation some, or all, of the relief it seeks for the alleged misappropriation of its land.  Alternatively, the appeals court could affirm the decision to deny the Nation compensation, but do so on grounds materially different than those relied upon by the district court.  It is also possible that the Nation and the State of New York will reach a settlement, potentially obviating any need for the Court of Federal Claims to adjudicate the Nation's breach of trust claims.  Because the Nation's claims against the United States cannot be fully and accurately assessed until its *Land Reclamation Suit* against the State of New York is finally resolved, those claims must be dismissed without prejudice.  *See Mac-Donald, Sommer & Frates v. Yolo Cnty.*, 477 U.S. 340, 350 (1986) ("[A] court cannot determine whether a municipality has failed to provide 'just compensation' until it knows what, if any, compensation the responsible administrative body intends to provide."); *Williamson Cnty.*, 473 U.S. at 191 (concluding that the plaintiff's takings claim "simply

---

[7]    Although the Court of Federal Claims is an Article I tribunal, it generally adheres to traditional justiciability standards applicable to courts established under Article III.  *See, e.g.*, *Weeks Marine, Inc. v. United States*, 575 F.3d 1352, 1359 (Fed. Cir. 2009); *Anderson v. United States*, 344 F.3d 1343, 1350 n.1 (Fed. Cir. 2003); *see also Mass. Bay Transp. Auth. v. United States*, 21 Cl. Ct. 252, 257–58 (1990) ("Although established under Article I, the Claims Court traditionally has applied the case or controversy requirement unless jurisdiction conferred by Congress demands otherwise.").

[could not] be evaluated until the administrative agency ha[d] arrived at a final, definitive position regarding how it [would] apply the regulations at issue to the particular land in question").

D. Leave to Amend

Finally, we turn to the Nation's argument that the Court of Federal Claims abused its discretion in refusing to allow it to amend its complaint to add a "judicial takings" claim alleging that the district court's judgment effectuated a compensable taking of the Nation's vested property rights.[8]  Binding precedent establishes that the Court of Federal Claims has no jurisdiction to review the merits of a decision rendered by a federal district court. *See Allustiarte v. United States*, 256 F.3d 1349, 1352 (Fed. Cir. 2001); *Joshua v. United States*, 17 F.3d 378, 380 (Fed. Cir. 1994); *see also Innovair Aviation Ltd. v. United States*, 632 F.3d 1336, 1343 (Fed. Cir. 2011); *Vereda, Ltda. v. United States*, 271 F.3d 1367, 1375 (Fed. Cir. 2001).  Adjudication of the Nation's proposed judicial takings claim would require the Court of Federal Claims to scrutinize the merits of the district court's judgment, a task it is without authority to undertake.

---

[8]    Our review of whether the Court of Federal Claims correctly declined to allow the Nation to amend its complaint to add a judicial takings claim need not be postponed until litigation on the *Land Reclamation Suit* is finally resolved.  Regardless of whether the district court's judgment dismissing the Nation's land claim is reversed or otherwise modified on appeal, "Article III forbids the Court of Federal Claims, an Article I tribunal, from reviewing the actions of an Article III court . . . ." *Boise Cascade Corp. v. United States*, 296 F.3d 1339, 1344 (Fed. Cir. 2002).

The situation presented here parallels that presented in *Allustiarte*, 256 F.3d at 1351–53. There the plaintiffs brought suit in the Court of Federal Claims alleging that bankruptcy courts in the Ninth Circuit took their property without just compensation when they allowed the plaintiffs' assets to be sold at less than fair value. *Id.* at 1350–51. The Court of Federal Claims dismissed the plaintiffs' suit for lack of jurisdiction and this court affirmed. We explained that the Court of Federal Claims was without authority to scrutinize the decisions of the bankruptcy courts (which are subordinate to Article III courts) and "to determine whether [the plaintiffs] suffered a categorical taking of their property at the hands of the . . . courts." *Id.* at 1352.

A similar analysis applies here. The Nation alleges that in applying the doctrine of laches to bar its land claim, the district court improperly "took away the Nation's legal right to sue for compensation for its stolen land." The Court of Federal Claims, however, is without authority to adjudicate the Nation's claim that it suffered a compensable taking at the hands of the district court. *See Allustiarte*, 256 F.3d at 1352; *Joshua*, 17 F.3d at 380. The court has no jurisdiction to review the decisions "of district courts and cannot entertain a taking[s] claim that requires the court to scrutinize the actions of another tribunal." *Innovair*, 632 F.3d at 1344 (alteration in original) (citations and internal quotation marks omitted). As the government correctly notes, "[d]eciding whether the district court's judgment resulted in an unconstitutional taking of the Nation's property would require the Court of Federal Claims to review the judgment and pass on its correctness." Just as the plaintiffs' takings claim in *Allustiarte* was an improper collateral attack on the judgment of the bankruptcy courts, the Nation's proposed

judicial takings claim is an attempt to mount an improper collateral attack on the judgment of the district court.[9]

Permitting parties aggrieved by the decisions of Article III tribunals to challenge the merits of those decisions in the Court of Federal Claims would circumvent the statutorily defined appellate process and severely undercut the orderly resolution of claims. *See* 28 U.S.C. § 1291 ("The court of appeals . . . shall have jurisdiction of appeals from all final decisions of the district courts of the United States."); *Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211, 218–19 (1995) (explaining that Article III "gives the Federal Judiciary the power, not merely to rule on cases, but to *decide* them, subject to review only by superior courts in the Article III hierarchy").

---

[9]    *Boise*, 296 F.3d at 1344–45, upon which the Nation relies, is inapposite. There the government obtained an injunction against Boise Cascade Corp. ("Boise") which prevented it from logging on its property without a permit. Boise thereafter filed suit in the Court of Federal Claims, alleging that the government's decision to seek and obtain the injunction effectuated a taking of a compensable property interest. We concluded that the Court of Federal Claims had jurisdiction to consider Boise's takings claim, as the issue of whether the government's actions in "seeking and obtaining the injunction" effectuated a taking of Boise's property rights "was not before the district court, nor could it have been." *Id.* at 1344. We emphasized, moreover, that "the sole forum available to hear Boise's claim" was the Court of Federal Claims. *Id.* Here, by contrast, the question of whether the Nation has the right to bring an action for the loss of its tribal lands was squarely before the district court, and the Nation's pending appeal to the Second Circuit provides it with a forum to challenge any errors in the district court's judgment.

CONCLUSION

Accordingly, we affirm the United States Court of Federal Claims' determination that the Nation's breach of trust claims are not yet ripe for review, vacate its ruling that it lacked jurisdiction over those claims, and remand the case with instructions to dismiss the breach of trust claims without prejudice.

**AFFIRMED IN PART, VACATED IN PART, AND REMANDED**